# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alfred Ricco,      :
    Petitioner   :
          :
  v.       :
          :
Unemployment Compensation :
Board of Review,    : No. 251 C.D. 2021
    Respondent  : Submitted: October 15, 2021


BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
     HONORABLE ANNE E. COVEY, Judge
     HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY         FILED: December 2, 2021

    Alfred Ricco (Claimant) petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) January 14, 2021 order affirming the Referee's decision that denied him UC benefits under Section 402(e) of the UC Law (Law).[1]  The sole issue before this Court is whether the UCBR erred by concluding that UPMC Presbyterian Shadyside (Employer) met its burden of proving that Claimant committed willful misconduct.  After review, this Court affirms.

    Claimant worked for Employer as a Senior Manager IT-DBA from November 26, 2007 until February 21, 2020, when Employer terminated his employment.  Employer had a policy that paid time off (PTO) earned by an employee vests after three years of employment.  Thereafter, if an employee resigned but returned to work for Employer within one year, the employee would be entitled to

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (referring to willful misconduct).

his previously accrued PTO. If, however, the employee's PTO had not vested before he resigned, it was forfeited and, even if Employer rehired him within one year, his PTO would not be restored (Policy). *See* Certified Record (C.R.) at 97-98, 102.[2] In addition, Employer's Policy and Procedure Manual (Manual) specified that employee "[t]ime must be recorded accurately." C.R. at 86. Further, the Code of Conduct portion of the Manual expressly prohibits employees from unethical behavior, including "[f]alsifying records, including . . . business-related documentation[.]" C.R. at 80-81. Claimant had access to and was familiar with these policies. *See* C.R. at 100-101, 111.

In February 2019, Matt Dalessandro (Dalessandro),[3] an employee Claimant supervised, resigned. Pursuant to Employer's Policy, because Dalessandro had not yet worked for Employer for three years, the approximately five weeks of PTO he earned to that point had not vested, and he lost it. *See* C.R. at 78, 98.

A short time thereafter (approximately March 2019), Dalessandro expressed an interest in returning to work for Employer, and inquired of Claimant whether he would be entitled to, *inter alia*, any of his forfeited PTO. *See* C.R. at 16. In approximately May 2019, Claimant asked his supervisor, Employer's Data Services Director Cristin Sargo (Sargo), if Dalessandro could have any of his forfeited PTO if Employer rehired him, and Sargo referred him to Employer's Lead Human Resources (HR) Consultant Jennifer MacEachern (MacEachern). *See* C.R. at 104-105, 109. MacEachern told Claimant that Employer could not reinstate Dalessandro's PTO. *See* C.R. at 98-99, 109. Dalessandro returned to work for Employer.

---

[2] Claimant's Reproduced Record is a copy of the Certified Record, thus, the citations therein are Certified Record citations. For clarity, this Court will similarly reference the record herein.

[3] Although the Referee's telephone hearing notes of testimony reflect that the employee's name is Matt *Elsandro*, his name is Matt *Dalessandro*. *See* C.R. at 78.

In February 2020, MacEachern learned that Claimant had given his staff PTO over the holidays. *See* C.R. at 98, 108. While investigating that incident, MacEachern became aware that, despite Employer's Policy, Claimant had authorized Dalessandro to take approximately 12 days of unearned PTO. *See* C.R. at 78, 97, 100. On February 11, 2020, MacEachern and Sargo met with Claimant to discuss Claimant's actions. *See* C.R. at 98-99. During that meeting, Claimant admitted to giving Dalessandro PTO (on May 30, July 13, July 15-19, August 8, and December 23-24 and 26-27, 2019), and allowing Dalessandro's time record in Employer's automated time and attendance system (Kronos) to reflect that Dalessandro worked those days. Claimant declared that he had Sargo's prior approval to do so. *See* C.R. at 78, 98, 100. Sargo denied giving Claimant any such approval. *See* C.R. at 98.

At MacEachern's and Sargo's request, by February 11, 2020 email, Claimant outlined his PTO practices. *See* C.R. at 77-78. Therein, Claimant explained that Dalessandro had been an exceptional employee, and that he allowed him to take unearned PTO on the subject dates, but added that Dalessandro had worked some extra hours on evenings and weekends. *See* C.R. at 78, 110.

By February 21, 2020 letter, Sargo notified Claimant that Employer was terminating his employment, effective that day, on the basis that he "encouraged [Dalessandro] to falsify [his] time card, which is considered theft of time[,]" "[he] showed poor judgment in [his] decision making [and], as a result, [Employer had] diminished trust in [him] as a leader." C.R. at 75; *see also* C.R. at 100.

Claimant applied for UC benefits on February 23, 2020. On March 16, 2020, the Altoona UC Service Center determined that Claimant was ineligible for UC benefits pursuant to Section 402(e) of the Law. Claimant appealed and a Referee held a hearing on September 15, 2020. On September 23, 2020, the Referee affirmed the UC Service Center's determination. Claimant appealed to the UCBR. On

January 14, 2021, the UCBR affirmed the Referee's decision.[4]  Claimant appealed to this Court.[5]

> Initially,
>
> Section 402(e) of the Law provides that an employee is ineligible for [UC] benefits when his unemployment is due to discharge from work for willful misconduct connected to his work.  The employer bears the burden of proving willful misconduct in a[] [UC] case.  Willful misconduct has been defined as (1) an act of wanton or willful disregard of the employer's interest; (2) a deliberate violation of the employer's rules; (3) a disregard of standards of behavior which the employer has a right to expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or a disregard of the employee's duties and obligations to the employer.

*Sipps v. Unemployment Comp. Bd. of Rev.*, 181 A.3d 479, 481 (Pa. Cmwlth. 2018) (emphasis omitted) (quoting *Dep't of Transp. v. Unemployment Comp. Bd. of Rev.*, 755 A.2d 744, 747 n.4 (Pa. Cmwlth. 2000) (citation omitted)).

> Where willful misconduct is based upon the violation of a work rule, the employer must establish the existence of the rule [and] its reasonableness, and that the employee was aware of the rule.  Once employer meets this burden, the burden shifts to the claimant to prove that the rule was unreasonable or that he had good cause for violating the rule.

---

[4] On January 29, 2021, Claimant sought reconsideration of the UCBR's decision, which the UCBR denied on February 12, 2021.

[5] "'Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence.' *Miller v. Unemployment Comp. Bd. of Rev*[.], 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014)." *Talty v. Unemployment Comp. Bd. of Rev.*, 197 A.3d 842, 843 n.4 (Pa. Cmwlth. 2018).

*Sipps*, 181 A.3d at 482 (quoting *Weingard v. Unemployment Comp. Bd. of Rev.*, 26 A.3d 571, 574-75 (Pa. Cmwlth. 2011) (citation omitted)). "A claimant has good cause if his . . . actions are justifiable and reasonable under the circumstances." *Grand Sport Auto Body v. Unemployment Comp. Bd. of Rev.*, 55 A.3d 186, 190 (Pa. Cmwlth. 2012) (citation omitted) (quoting *Docherty v. Unemployment Comp. Bd. of Rev.*, 898 A.2d 1205, 1208-09 (Pa. Cmwlth. 2006)). Ultimately, "[t]he question of whether conduct rises to the level of willful misconduct is a question of law to be determined by this Court." *Scott v. Unemployment Comp. Bd. of Rev.*, 105 A.3d 839, 844 (Pa. Cmwlth. 2014).

Claimant argues that the UCBR erred by concluding that Employer met its burden of proving that Claimant committed willful misconduct.

At the Referee hearing, Sargo confirmed that Claimant mentioned Dalessandro's interest in returning to Employer and asked her if Dalessandro could get his PTO reinstated, and she directed Claimant to ask HR. *See* C.R. at 104-105. Sargo declared that was the only conversation she had with Claimant on that subject, and she never authorized Claimant to let Dalessandro take unearned PTO.[6] *See* C.R. at 104. Sargo further pronounced that she has never given Claimant any type of permission to handle PTO internally within their department without HR's approval. *See* C.R. at 105.

Sargo explained that employees or their managers post their PTO on the calendar and, every two weeks, before she approves the time cards and signs off for payroll processing, she checks the PTO calendar to make sure those dates were reflected in Kronos. *See* C.R. at 105. Sargo testified that Dalessandro's PTO subject

---

[6] Sargo claimed that the only option she could have authorized for Dalessandro within the department would have been a flexible work schedule (i.e., working a weekend day in order to have a week day off). *See* C.R. at 105.

dates had been removed from the calendar before she undertook her sign-off process for the relevant weeks, so she was not aware that he took PTO. *See* C.R. at 105. Sargo described seeing an email Claimant authored directing that Dalessandro's PTO be removed from the PTO calendar. *See* C.R. at 105.

Claimant testified that, when he discussed Dalessandro's PTO with Sargo, she told him that if HR did not approve the request, she and Claimant could make it work internally. *See* C.R. at 108. Therefore, Claimant claims that he did what he had approval to do. *See* C.R. at 108, 113. Claimant admitted that he allowed Dalessandro's schedule in Kronos to reflect that Dalessandro worked on the days for which he was given PTO. *See* C.R. at 110-111, 113. However, Claimant declared that he had been a team leader for nearly 13 years, and would not have allowed Dalessandro to take unearned PTO without approval. *See* C.R. at 108, 111-112.

Claimant further clarified that the actual PTO he permitted Dalessandro to take was closer to 8 days, and not the 12 days Employer claims, because Dalessandro had worked extra hours. *See* C.R. at 110. Claimant asserted that his actions were "not harmful in any way," C.R. at 108, because the value of bringing someone with Dalessandro's experience back to work for Employer (as opposed to hiring and training someone new) was greater than the "pretty small" (i.e., $3,000.00 to $4,000.00) dollar amount Employer lost by giving Dalessandro the PTO. C.R. at 110; *see also* C.R. at 113.

Based upon the evidence, the Referee denied Claimant UC benefits pursuant to Section 402(e) of the Law, stating: Employer established that it had a PTO policy in place; Claimant was aware of that policy; and, based upon Employer's witnesses' credible testimony that Claimant allowed Dalessandro to use unearned PTO without authorization, Claimant's conduct violated that Policy. *See* Referee Dec. at 3; C.R. at 118.

6

This Court has explained: "[T]he [UCBR] is the ultimate fact-finder in [UC] matters . . . . Where substantial evidence supports the [UCBR's] findings, they are conclusive on appeal." *Sipps*, 181 A.3d at 484 (quoting *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Rev.*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008) (citations omitted)). "Substantial evidence is relevant evidence upon which a reasonable mind could base a conclusion." *Sipps*, 181 A.3d at 484 (quoting *Sanders v. Unemployment Comp. Bd. of Rev.*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999)). "The [UCBR] is also empowered to resolve conflicts in the evidence." *Serrano v. Unemployment Comp. Bd. of Rev.*, 149 A.3d 435, 439 (Pa. Cmwlth. 2016). Therefore, "'[q]uestions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the [UCBR], and are not subject to re-evaluation on judicial review.'" *Id.* (quoting *Peak v. Unemployment Comp. Bd. of Rev.*, 501 A.2d 1383, 1388 (Pa. 1985)).

Here, the UCBR adopted the Referee's factual findings[7] and conclusions of law and affirmed the Referee's decision, reasoning:

> The [UCBR] resolves the conflicts in the testimony, in relevant part, in favor of [Employer] and finds its witnesses' testimony to be credible.
>
> . . . .
>
> [C]laimant's supervisor credibly testified that [Claimant] did not have permission to grant [Dalessandro] unearned PTO time. Although [Claimant] indicated that he wanted to allow this individual additional PTO time because he was a good employee, this is not good cause for violating [Employer's] [P]olicy. Further, directing an employee to falsify [his] timesheet(s) is behavior which falls below the standard of conduct that an employer has [a] right to expect.

UCBR Op. at 1; C.R. at 139 (quotation marks omitted).

---

[7] The UCBR amended Referee Finding of Fact 2 "to reflect that [C]laimant was aware of [E]mployer's PTO vesting policy." UCBR Order at 1; C.R. at 139.

Based upon this Court's review of the record, there was substantial evidence to support the UCBR's findings and conclusions. Thus, this Court holds that the UCBR properly concluded Claimant committed willful misconduct without good cause for doing so. Accordingly, this Court discerns no error or abuse of discretion by the UCBR in denying Claimant UC benefits under Section 402(e) of the Law.

For all of the above reasons, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alfred Ricco,                                      :
               Petitioner               :
                                               :
         v.                                      :
                                               :
Unemployment Compensation          :
Board of Review,                                 :     No. 251 C.D. 2021
               Respondent            :

## O R D E R

AND NOW, this 2nd day of December, 2021, the Unemployment Compensation Board of Review's January 14, 2021 order is affirmed.

_____

ANNE E. COVEY, Judge